```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JIMMY SOLANKI,                                              :
                                        Plaintiff,          :
                                                            :           12 Civ. 00027 (LGS)
                    -against-                               :
                                                            :           OPINION AND ORDER
7-ELEVEN, INC.,                                             :
                                        Defendants.         :
                                                            :
------------------------------------------------------------:
                                                            X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Jimmy Solanki ("Solanki") brings this action pursuant to New York General Business Law §§ 683 and 687, commonly referred to as the Franchise Sales Act (the "FSA"), against Defendant 7-Eleven, Inc. ("7-Eleven"). Defendant moves for summary judgment dismissing the action in its entirety. For the reasons discussed below, this motion is denied.

**I.     Facts**

The facts are taken from the parties' summary judgment submissions and, as is required on this motion, construed in the light most favorable to Plaintiff, the nonmoving party.

Solanki purchased his first 7-Eleven franchise in 2003, located in Clifton, New Jersey and his second 7-Eleven franchise in 2005, located in Manhattan, New York. Solanki sold the Clifton, New Jersey store in 2009.

Shortly thereafter, Solanki became interested in purchasing a third 7-Eleven franchise in Brooklyn, New York, known as Store 34320, the store that is the subject of this lawsuit (the "Store"). In late May or early June 2009, Solanki met with 7-Eleven Franchise Sales Manager Martina Hagler ("Hagler") to discuss this possibility (the "Initial Meeting").

1

At or shortly following the Initial Meeting, Solanki received a copy of the July 2009 edition of 7-Eleven's Franchise Disclosure Document for New York. The document contained, among other things, "unaudited financial statements that show the most recently available annual averages of the actual sales, earnings and other financial performance . . . of franchised 7-Eleven stores." The document also included language cautioning franchisees that "[m]any factors will affect the actual sales and earnings of a store you franchise" and that they "should not predict any future results based on historical operating summaries."

At the Initial Meeting, Hagler explained the Franchise Disclosure Document and the application process to Solanki. Solanki had some familiarity with the process, as he had experienced it before with both of his prior 7-Eleven franchises.

Solanki testified that he had made up his mind that he wanted to purchase the Store before he received the Franchise Disclosure Document and that 7-Eleven would provide a Franchise Disclosure Document only after a potential franchisee had expressed an interest in acquiring a particular store. Solanki filed a declaration in opposition to this motion clarifying that, while he expressed an interest in the Store prior to viewing the Franchise Disclosure Document, he did not decide or commit to acquire the Store until after he had seen the document.

At or shortly following the Initial Meeting, Solanki also received a Business Plan Outline from 7-Eleven, which stated, "Acceptance of this plan by 7-Eleven in no way . . . represent[s] that 7-Eleven agrees that the sales, profits, expenses or other financial information reported in your plan are accurate, obtainable, or feasible." The Business Plan Outline also stated, "By reviewing or accepting the Store Budget, 7-Eleven is in no way representing that a particular store will achieve a certain level of sales, expenses, income or any other financial performance."

At the time he received the Business Plan Outline, Solanki signed a disclaimer, which stated, in part, "I/we acknowledge . . . that the acceptance of me/us as franchisee(s) by 7-Eleven

2

["

is not to be construed as 7-Eleven's representation that the sales and earnings calculations which I/we have set forth in the sample financial statement for the store will be achieved."

Following the Initial Meeting, Solanki filled out the Business Plan Outline without anyone else's assistance or consultation except for the input and documents Defendant's personnel provided him. Using the outline, he prepared a business plan as required, projecting sales to be $1.5 million for the first year of operation. Solanki submitted his business plan to Hagler for approval by Defendant.

About two months after submitting his business plan, Solanki had another meeting ("Second Meeting") with Hagler and 7-Eleven Market Manager Sal Cangelosi ("Cangelosi"). At the Second Meeting, the representatives from 7-Eleven approved his business plan and told Solanki that he was a qualified candidate.

Defendant points to deposition testimony from Solanki, which Defendant interprets as saying that neither Hagler nor Cangelosi represented to Solanki at the Second Meeting that 7-Eleven had done its own revenue projections for the Store. Solanki counters in his declaration that, while neither Hagler nor Cangelosi directly stated that 7-Eleven had done its own projections, Hagler informed Solanki at the Second Meeting that the projections in his business plan were "consistent with and in line with 7-Eleven's estimates," which Solanki understood to imply that 7-Eleven had done its own projections.

7-Eleven's revenue projections for the Store, if any existed, were never provided to Solanki. No revenue projections, prepared either by 7-Eleven or Solanki, were included in the Franchise Disclosure Document.

On or before July 21, 2009, Solanki received a copy of 7-Eleven's form franchise agreement (the "Agreement"). The Agreement contained an integration clause. Solanki

executed the Agreement on August 24, 2009. Pursuant to the Agreement, Solanki paid 7-Eleven $228,900 in franchise fees.

At the time he executed the Agreement, Solanki understood that construction on the Store would be completed in October 2009; however, zoning and code issues caused a delay until June 2010. The Store opened on June 25, 2010, which was the effective date of the Agreement.

During its first year of operation, the Store never achieved the sales that Solanki had projected in his business plan. By June of 2011, the Store had generated total sales of about $310,000. During that first year, Solanki invested an additional $50,000 in the Store.

In or about April of 2011, Solanki requested that 7-Eleven reassign him to another store in Manhattan, which request was denied. Then, in or about June of 2011, Solanki communicated to 7-Eleven that he wished to return the Store to 7-Eleven because he could not make payroll. At Solanki's request, 7-Eleven terminated the Agreement effective June 20, 2011.

The Complaint was filed on January 4, 2012.

## II.     Legal Standard

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the Court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *See Id.* at 255.

**III.     Discussion**

In this action, Solanki asserts four claims against 7-Eleven, all for violations of the FSA, and all based on the same factual predicate.  Solanki alleges that Hagler represented to him at the Second Meeting that the revenue projections in his CBP "were consistent with and in line with 7-Eleven's estimates" and that he relied on this representation when deciding to enter into the Agreement.  Solanki argues that 7-Eleven therefore violated the FSA because (1) the revenue estimates of 7-Eleven and the basis for the estimates, alluded to by Hagler, were not included in the Franchise Disclosure Document, as required by the FSA and (2) the 7-Eleven earnings estimates were false, misleading and lacked any reasonable basis.

Defendant moves for summary judgment on all claims, arguing that the record does not contain any evidence to support the allegations in the Complaint or create any disputes of material fact.  This argument fails, as the Court finds that the record does contain evidence such that a reasonable jury could return a verdict for Solanki, and does raise several issues of material fact to be decided by a jury.

First, Defendant argues that no one from 7-Eleven could possibly have represented to Solanki that his revenue projections for the Store were consistent with those of 7-Eleven because Solanki admits in his deposition that no one from 7-Eleven told him that 7-Eleven had done its own projections for the Store.  However, this testimony is ambiguous:

> Q. . . . Did [the representatives from 7-Eleven] ever tell you they had done their own projections?
> A. They had similar projections.
> Q. Did they?
> A. 7-Eleven always projects before they open stores.
>     Mr. Miller [attorney for Plaintiff]: The question is about the store though.
> A. No.  No, they did not.

At first, when asked if the representatives from 7-Eleven ever told him "they" – which could mean either the specific representatives at issue or 7-Eleven, the corporation – had done

5

their own projections, Solanki testifies that they "had similar projections," which implies that they had shared information with Solanki about their projections. Then, when pressed on the matter, Solanki testifies that "7-Eleven always projects," again implying, but not stating, that the representatives had shared information with him about the company's projections. Finally, after a statement by his own attorney, Solanki says, "No, they did not." However, it is not entirely clear on the record which question, if any, this statement is answering, and even if it is an answer to the question about whether the 7-Eleven representatives told him that they had done their own projections, then this answer causes the deposition testimony to contradict, or at a minimum, confuse, itself.

The Court must construe this deposition testimony in the light most favorable to Solanki, the nonmoving party, and must draw all reasonable inferences in Solanki's favor. *Anderson*, 477 U.S. at 255. Therefore, the Court declines to interpret this testimony as an admission by Solanki that no one from 7-Eleven told him, or implied to him, that 7-Eleven had done its own projections for the Store.

Furthermore, Solanki provides a declaration in which he clarifies his deposition, testifying that while the representatives from 7-Eleven did not directly state that 7-Eleven had done its own projections, Hagler did inform Solanki that his projections were consistent with those of 7-Eleven, which Solanki understood to imply that 7-Eleven had done its own projections. Defendant argues that Solanki's declaration should be disregarded. A subsequent declaration that contradicts prior deposition testimony should be disregarded on summary judgment. *Mack v. U.S.*, 814 F.2d 120, 124 (2d Cir. 1987). However, the declaration at issue cannot be said to contradict definitively the prior deposition testimony, as the prior testimony is unclear. Instead the declaration works to clarify the deposition's apparent internal inconsistency.

Considering all of this testimony, it is clear that whether Hagler made the representation alleged in Solanki's complaint is a disputed issue of material fact for trial.

Next, Defendant argues that, even assuming the representation discussed above was made, Solanki had already made up his mind to purchase the Store before he received the Franchise Disclosure Document; therefore, Solanki could not have relied on Hagler's alleged representation or its absence from the Franchise Disclosure Document when deciding whether to enter into the Agreement.  Defendant provides deposition testimony from Solanki in which he agrees that he had "made up [his] mind that [he] *wanted* to buy" the Store before he received the Franchise Disclosure Document.

However, making up one's mind that he *wants* to buy a particular store and making up one's mind that he is committed to actually go through with the purchase based on information are two different things.  Solanki testifies in his declaration that while he expressed his desire to acquire the Store prior to viewing the Franchise Disclosure Document – desire that he testifies in both his deposition and his declaration was necessary to get 7-Eleven to provide the Franchise Disclosure Document in the first place – he did not decide or make a commitment to do so until afterwards.  Thus, whether Solanki relied on Hagler's alleged representation is a disputed issue of material fact for trial.

Finally, Defendant argues that, even assuming Solanki relied on Hagler's alleged representation, this reliance was not reasonable because Solanki disclaimed reliance on such representations.  Defendant provides evidence of disclaimers reviewed, acknowledged and signed by Solanki before he entered into the Agreement, many of which are quoted in the "Facts" section above.

Regarding a claim for common law fraud, it is true that "a party cannot justifiably rely on a representation that has been disclaimed by agreement." *Dallas Aerospace, Inc. v. CIS Air*

7

*Corp.*, 352 F.3d 775, 785 (2d Cir. 2003).  However, Solanki's claims are under the FSA, which prohibits waivers of any duty or liability imposed by the FSA.  *See* New York General Business Law § 687(4)-(5); *Emfore Corp. v Blimpie Assoc., Ltd.*, 860 N.Y.S.2d 12, 14 (1st Dep't 2008) (holding that waivers of liability are barred by the FSA).  Therefore, any disclaimers reviewed, acknowledged or signed by Solanki cannot bar his claims under the FSA.  *See id.*  This leaves disputed issues of material fact for trial as to the reasonableness of Solanki's reliance.  *See id.*

### IV.  Conclusion

For the reasons discussed above, Defendant's Motion for summary judgment dismissing all of Plaintiff's claims is hereby DENIED.

Dated: January 29, 2014
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE